USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Apr 10, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
PURCHASE PARTNERS, LLC,                                                 :
                                                                        :
       Plaintiff,                    :  09 Civ. 9687 (JMF)
                                                                        :
  -v-                                                         :  OPINION AND ORDER
                                                                        :
CARVER FEDERAL SAVINGS BANK,                                            :
                                                                        :
       Defendant,                    :
                                                                        :
and                                                                     :
                                                                        :
MARINER'S BANK,                                                         :
                                                                        :
       Third-Party Defendant.        :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

  On December 27, 2012, Plaintiff Purchase Partners, LLC ("Purchase Partners"), and third-party Defendant Mariner's Bank (together "Plaintiffs"), moved for reconsideration of two factual findings and two legal conclusions reached by the Court in its December 13, 2012 Opinion and Order (the "Opinion and Order"). (Docket No. 147). On January 11, 2013, Purchase Partners filed an Amended Complaint re-alleging claims dismissed by the Court in the Opinion and Order, but currently under review due to the pending motion for reconsideration. (Docket No. 150). On January 25, 2013, Defendant Carver Federal Savings Bank ("Carver" or "Defendant") filed an Answer to the Amended Complaint and moved to strike three paragraphs of the Amended Complaint containing the aforementioned allegations. (Docket Nos. 156 &

158). On February 18, 2013, Plaintiffs moved to strike four paragraphs in Defendant's Answer, as well as Defendant's second counterclaim. (Docket No. 177).

For the reasons discussed below, Plaintiffs' motion for reconsideration is GRANTED in part and DENIED in part, Defendant's Motion to Strike is GRANTED, and Plaintiffs' Motion to Strike is DENIED.

## DISCUSSION

The Court assumes familiarity with the facts of this case, a full recitation of which can be found in the Court's December 13, 2012 Opinion and Order. *See Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09 Civ. 9687 (JMF), 2012 WL 6641633 (S.D.N.Y. Dec. 13, 2012) (Docket No. 145).

**A. Plaintiffs' Motion for Reconsideration and Defendant's Motion to Strike**

Plaintiffs have moved for reconsideration of two factual findings and two legal conclusions in the Court's Opinion and Order. In turn, Defendant has moved to strike the paragraphs of Plaintiffs' Amended Complaint containing the re-alleged claims that are currently under review due to the motion for reconsideration.

Motions for reconsideration are governed by Local Rule 6.3, which is meant to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (quoting *Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, No. 03 Civ. 5429 (RJS), 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008)). A district court "has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the

2

court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)). "'The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The Rule must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *United States v. Treacy*, No. 08 Cr. 0366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (internal quotation mark omitted).

### 1. The Factual Findings

At the outset, Plaintiffs seek reconsideration of two "factual conclusions" in the Opinion and Order. First, they contend that the Court erred in stating that Shaker Gardens, Inc. "defaulted on the loan in or before June 2008" (Op. and Order 2), because the parties agree the default happened in either April 2007 or April 2008. (Pls.' Mem. Law Supp. Mot. Recons. 5 (Docket No. 148)). Second, they assert that the Court was incorrect in stating that "according to Purchase Partners," Carver made the first two loan payments on behalf of Shaker "using money from the repair escrow" (Op. and Order 5), when, in fact, Purchase Partners had argued that Carver made the payments with its own money. (Pls.' Mem. Law Supp. Mot. Recons. 6).

There is no merit to this request. The first "factual conclusion" is not erroneous, as there is no inconsistency between the parties' positions on when the default occurred and the Court's statement that it occurred "in *or before* June 2008"; April 2007 and April 2008 are both, after all, "before" June 2008. The second "factual conclusion" is not a factual conclusion at all, but

3

rather a characterization of Plaintiffs' position. And regardless, as Plaintiffs themselves concede, neither of these "factual conclusions" had any bearing on the Court's holdings in the Opinion and Order. (Pls.' Mem. Law Supp. Mot. Recons. 6). In light of that concession alone, there is no basis to grant the extraordinary remedy of reconsideration. *See, e.g.*, *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory Ltd.*, No. 07-CV-3208 (KAM) (SMG), 2010 WL 4878955, at *3 (E.D.N.Y. Nov. 23, 2010) (denying a motion for reconsideration of factual findings on the ground that they did not "materially change the record before the court, nor alter the conclusions previously reached by this court").

   2. **The Foreclosure Action**

Next, Plaintiffs request that the Court reconsider its conclusion that the Participation Agreement (the "Participation Agreement" or "Agreement") entered into by Mariner's Bank and Carver did not "require[] Carver to commence a foreclosure action instead of a civil action." (Op. and Order 20). The relevant portion of the Agreement states:

> [u]pon the occurrence of a default under any of the Loan Documents evidencing or securing the Loan which would permit acceleration of the maturity of the Loan[,] . . . the Lender . . . shall promptly and diligently (but in consultation with Participant) prosecute its remedies under the Loan Documents in good faith and in accordance with the standard of care set in Section 3.1 above (including, without limitation, taking all action, in a reasonably prudent manner, which is reasonably calculated to foreclose each lien and enforce each security interest against the Security).

(Agreement § 3.6). In its Opinion and Order, the Court found that there was "no basis for a jury to find that Carver failed to 'promptly and diligently . . . prosecute its remedies under the Loan Documents in good faith and in accordance with the standard of care set in Section 3.1' by filing a civil case instead of seeking foreclosure in the first instance." (Op. and Order 20 (quoting Agreement § 3.6(b))).

Plaintiffs contend that the language at the end of the quoted paragraph "recite[s] an obligation on the part of Carver to 'foreclose each lien.'" (Pls.' Mem. Law Supp. Mot. Recons. 14 (quoting Agreement § 3.6)). The Court remains unpersuaded. On its face, the Agreement references "legal *remedies*" and only mentions foreclosure in a parenthetical. In any event, Plaintiffs have not demonstrated an adequate basis for the Court to employ the "extraordinary remedy" of reconsideration; instead, they are merely seeking to relitigate an issue decided against them. *See Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (explaining that a motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources" (quoting *In re Initial Public Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005))). Accordingly, Plaintiffs' motion for reconsideration is denied as to this argument. Because the allegations contained in paragraphs 25, 43, and 44 of the Amended Complaint are at odds with the Court's ruling, Defendant's motion to strike these paragraphs is granted.

**3. The Election of Remedies**

Finally, Plaintiffs argue that the Court did not address their argument that Carver's prior breach of the Agreement relieved Mariner's Bank of its obligation to pay its share of the advances. (Pls.' Mem. Law Supp. Mot. Recons. 7). Although the Court did consider a materially identical argument in the context of Mariner's Bank's transfer of its interest in the loan to Purchase Partners, Plaintiffs contend that the Court erred in concluding that Plaintiffs were barred under New York's election of remedies from asserting this defense in that context or otherwise. (*Id.* at 9-11).

In its Opinion and Order, the Court explained that, under New York's doctrine of election of remedies,

> if a party to an agreement believes that the agreement has been breached, it "must choose between terminating the contract and continuing performance. If [the] party chooses to continue performance, it must give notice of breach to the other side, or it waives its rights to sue the breaching party." *Hallinan v. Republic Bank & Trust Co.*, 519 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) (quoting *RBFC One, LLC v. Zeeks, Inc.*, 367 F. Supp. 2d 604, 611 (S.D.N.Y. 2005), *aff'd*, 171 F. App'x 902 (2d Cir. 2006)). If timely notice is given, the non-breaching party retains its right to sue for the alleged breach, but "by choosing not to terminate the contract at the time of the breach, the nonbreaching party 'surrenders [its] right to terminate later based on that breach.'" *Albany Med. Coll. v. Lobel*, 745 N.Y.S.2d 250, 252 (App. Div. 3d Dep't 2002) (quoting *AM Cosmetics Inc. v Solomon*, 67 F. Supp. 2d 312, 317 (S.D.N.Y. 1999)).

(Op. and Order 37-38). The Court found that Mariner's Bank chose to continue performance on the grounds that (1) it sought Carver's consent to assign its participation interest in the loan to Purchase Partners; (2) it requested confirmation from Carver "that the advances were capitalized, not expensed"; and (3) it "requested notification of any future advances as called for by the . . . Participation Agreement so that it could administer this loan in a more efficient manner on [its] end." (*Id.* at 38-39 (internal quotation marks omitted)).

Upon further reflection, the Court agrees with Plaintiffs that there is a material dispute of fact with respect to whether Mariner's Bank elected to continue to perform under the Participation Agreement, which would preclude any action for Carver's alleged breaches. First, although there is some evidence that Mariner's Bank may have continued to perform under the Agreement after the alleged breaches, a reasonable trier of fact could conclude that Mariner's Bank did not in fact continue to perform, but instead preserved its right to terminate the contract until August 21, 2009, when Carver declined to remedy the alleged breaches articulated by Mariner's Bank in its undated letter. *See Lucente v. IBM*, 310 F.3d 243, 259 (2d Cir. 2002) (explaining that in determining whether a party has made an election, "the operative factor . . . is whether the non-breaching party has taken an action (or failed to take an action) that indicated to the breaching party that he had made an election" (internal quotation marks omitted)). Indeed, it

6

is not clear from the record whether Mariner's Bank made any election prior to the August 21, 2009 letter, let alone whether it was called upon to make such an election. *See id.* ("There is no specific time limit within which to make this election and generally, an election need not be made until the time comes when the party making the election must render some performance under the terms of the contract.").

Second, "where courts find that a breach claim is barred by the doctrine of 'election of remedies,' the claimant has [typically] not only continued to perform under the contract, but received benefits under the contract." *See Hallinan v. Republic Bank & Trust Co.*, 519 F. Supp. 2d 340, 352 (S.D.N.Y. 2007). Here, although Defendant cites various alleged benefits Mariner's Bank received under the Agreement (*see* Def.'s Mem. Law Opp'n Mot. Recons. 12 (Docket No. 168)), only one post-dates Carter's August 21, 2009 letter: Mariner's Bank's receipt on August 25, 2009, of information related to the advances made on the loan. (*See* Docket No. 88-15). The mere receipt of information, however, is arguably closer to "inaction, rather than [an] affirmative step[] to continue to perform the contract." *Hallinan*, 519 F. Supp. 2d at 352. It does not necessarily show that Mariner's Bank continued to receive benefits under the Agreement after August 21, 2009, when a reasonable juror could find that the bank elected to terminate.

Finally, although it is true that Mariner's Bank sought Carver's permission to transfer its interest to Purchase Partners, this does not necessarily show that it considered itself bound by the Agreement. Instead, as Plaintiffs contend, a jury could find that Mariner's Bank was attempting "overcome the 'put option' contained in [the] sale agreement," pursuant to which Purchase Partners could "put" its interest in the loan back to Mariner's Bank if Carver did not give its consent to the transfer. (Pls.' Mem. Law Supp. Mot. Recons. 10). Taking all of this into account, the Court agrees that a reasonable jury could find that Mariner's Bank elected to

terminate the Agreement when Carver failed to cure its alleged breaches and that, by virtue of those alleged breaches, Mariner's Bank was relieved from any obligation to continue its performance under the Agreement. It is therefore a question for the jury when, if at all, Mariner's Bank elected to terminate the Agreement and whether Mariner's Bank continued to perform under the Agreement thereafter. *See, e.g.*, *Hosp. Auth. of Rockdale Cnty. v. GS Capital Partners*, No. 09 Civ. 8716 (PAC), 2013 WL 840851, at *6 (S.D.N.Y. Mar. 6, 2013) (holding that the question of whether plaintiff elected to terminate a breached contract or continued to perform under the contract, thus precluding plaintiff's breach of contract claim, is a factual question for the jury); *Marathon Enters., Inc. v. Schroter GMBH & Co.*, No. 01 Civ. 0595 (DC), 2003 WL 355238, at *6 (S.D.N.Y. Feb. 18, 2003) (same).

Accordingly, the Court's grant of summary judgment to Carver as to liability on its second counterclaim is vacated. Further, to the extent that the Court held in its Opinion and Order that Carver's prior breaches relieved Mariner's Bank of its obligation to seek Carver's consent before assigning its participation interest, that holding is also vacated. Whether Carver breached the Agreement itself and, if so, whether its breach relieved Mariner's Bank of its obligation to reimburse Carver for the advances and to seek Carver's consent before assigning its participation interest, are issues properly left for trial.

**B. Plaintiffs' Motion to Strike**

Plaintiffs have also moved to strike the portions of Defendant's Answer that seek dilution of Plaintiffs' interest in the underlying loan. (*See* Pincus Decl. Ex. D ¶¶ 82, 83, 101, 118 (Docket No. 178-4)).[1] Plaintiffs argue that these amendments, which were not authorized by the

---

[1] In its Motion to Strike, Plaintiffs also moved to strike "those portions of Carver's counterclaims which were amended without leave of Court, including . . . references to advances made or purported to have been made by Carver with respect to the underlying loan to Shaker

Court, "substantially and prejudicially alter the shape of the litigation post-discovery, and should accordingly be stricken." (Pls.' Mem. Law Supp. Mot. Strike 5). Plaintiffs also move to strike Defendant's second counterclaim, alleging that Defendant did not produce evidence of the damages that it sustained as a result of Mariner's Bank's breach of the non-transfer provision of the Participation Agreement. Specifically, Plaintiffs argue that Carver failed to properly respond to its interrogatories regarding the damages it sustained and failed to retain an expert witness to testify as to those damages. (*Id.* at 9-11).

### 1. Dilution of Mariner's Bank's Interest

In its Motion for Summary Judgment, Purchase Partners argued that under Section 3.8(a) of the Participation Agreement, Defendant's sole remedy for Mariner's Bank's failure to pay its share of the advances is "to reduce the participant's share on a proportionate basis." (Pl.'s Mem. Law Supp. Mot. Summ. J. 23 (Docket No. 82)). In contrast, Carver asserted in its own Motion for Summary Judgment that under Section 3.8(a), it could sue Mariner's Bank and Purchase Partners for its share of the advances, plus interest. (Def.'s Mem. Law Supp. Mot. Summ. J. 22-24 (Docket No. 70)). In its Opinion and Order, the Court held that due to the "inherent ambiguity in the governing provision of the Participation Agreement, both parties' motions for summary judgment on this issue must be denied." (Op. and Order 36).

In its amended Answer, Carver added four additional paragraphs that provide, in relevant part, that "[i]n the event, that the Court does not grant Carver a monetary judgment against Mariner's in the amount of Mariner's share of the Advances plus interest, the Court, in the alternative, should enter a judgment reducing Mariner's interest in the Participation

---

Gardens, Inc. in addition to those advances alleged to have been made in Carver's initial counterclaims." (Pls.' Mem. Law Supp. Mot. Strike 1). In their Reply Memorandum in Further Support of the Motion to Strike, Plaintiffs withdrew this portion of their Motion, and so the Court does not address it. (Pls.' Reply Mem. Law Supp. Mot. Strike 1).

9

Agreement . . . based upon the amount of these Advances and increase Carver's interest in the Participation Agreement on a proportionate basis." (Am. Answer ¶¶ 101, 118 (Docket No. 153); *see also id.* ¶¶ 82-83). Plaintiffs now move to strike these paragraphs, which Defendant concedes add "an alternate form of relief" to its first and fourth counterclaims. (Def.'s Mem. Law Opp'n Mot. Strike 11 (Docket No. 186)). Plaintiffs argue that because Carver "[took] the position throughout more than three years of litigation that *only* the issuance of a check would satisfy Plaintiff's obligation for the non-payment of advances, Carver cannot simply slip in an alternate remedy without notice or leave of court. To allow the late alteration would drastically prejudice Plaintiff's trial strategy." (Pls.' Mem. Law Supp. Mot. Strike 8).

This argument is rejected. Although, as both Defendant and Plaintiffs concede, the case law regarding a party's ability to amend a counterclaim as of right in response to an amended complaint is "all over the map" (Def.'s Mem. Law Opp'n Mot. Strike 9 (quoting *Uniroyal Chem. Co. v. Syngenta Crop Prot. Inc.*, No. 3:02CV2253 (AHN), 2005 WL 677806, at *1 (D. Conn. Mar. 23, 2005)); *see also* Pls.' Reply Mem. Law Supp. Mot. Strike 13), there is no need for the Court to wade into that thicket in this case. That is because the Court has discretion to grant Carver leave to amend its Answer *nunc pro tunc*, *see, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), which should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2); *see Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010) (granting leave to amend *sua sponte*); *Deutsch v. Health Ins. Plan*, 573 F. Supp. 1443, 1446 (S.D.N.Y. 1983) (explaining that the court should grant leave to amend liberally, even when the leave of court is sought *nunc pro tunc*). Here, there is no reason for the Court to deny Carver's amendments.

Since filing its original answer, Carver has consistently pursued its claim for damages for Mariner's Bank's failure to reimburse it for the advances it made to Shaker Gardens, Inc. Plaintiffs have long been aware of these claims; indeed, the parties engaged in lengthy summary judgment motion practice regarding the proper remedy for this alleged breach. As such, "[t]his is not a case where the [defendant] pulled the rug from under the [plaintiff] by completely shifting [its] theory of liability at trial." *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994). Indeed, dilution of Mariner's Bank's participation interest is the precise form of relief Plaintiffs urged throughout this litigation. Moreover, even though this relief was not specifically demanded in Carver's original answer, the Court is not limited to the relief Carver originally requested, but instead may provide alternative relief if warranted by the evidence and law. *See* Fed. R. Civ. P. 54(c); *O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 171 (2d Cir. 1984) (holding that "the court was entitled to enter whatever relief it felt appropriate at the trial, whether or not it was requested in the pleadings").

Under these circumstances, there is little or no prejudice to Plaintiffs from allowing Carver's amendments to its first and fourth counterclaims. Nor is there any evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). Finally, the inconveniences to the parties and the Court are minimal. By contrast, there is a risk that striking these amendments would result in injustice to Carver. Accordingly, the Court grants Carver leave to amend its Answer, *nunc pro tunc*, to add paragraphs 82, 83, 101, and 118, and Plaintiffs' motion to strike these paragraphs is thus denied.

**2. Damages from Mariner's Bank's Assignment of its Participation Interest**

Plaintiffs have also moved to strike Defendant's second counterclaim on the grounds that Defendant failed to disclose its theory and calculation of damages.[2] As the Court noted in its Opinion and Order, Plaintiffs did not seek dismissal of Carver's second counterclaim on these grounds in its motion for summary judgment, even though "[o]n the record before the Court, it is not clear whether Carver suffered any damages as a result of the transfer." (Op. and Order 40). The Court concluded that the issue of damages resulting from Carver's second counterclaim, if any, should therefore be left for trial. (*Id.*).

Having failed to move to dismiss this counterclaim on these grounds in their motion for summary judgment, Plaintiffs cannot now raise this issue under the guise of a motion to strike, as doing so would be the functional equivalent of bringing a second summary judgment motion. The law is clear that "it is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion." *Campers' World Int't, Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004); *see also Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) (noting that "successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion"); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions." (citing cases)); *cf. Housing Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 445 n.66 (S.D.N.Y. 2005) ("It is worth noting here that defendants did not move for

---

[2] The damages portion of Carver's second counterclaim reads, in relevant part, as follows: "By reason of the foregoing, there is due and owing from Mariner's to Carver, a sum presently unknown but believed to be in excess of $1,000,000.00 with interest thereon, plus such other amounts to be determined at trial." (Amended Answer ¶ 106). The same language was contained in Carver's second counterclaim in its original Answer. (*See* Docket No. 4 ¶ 103).

summary judgment dismissing the . . . claim . . . Accordingly, the Court is not called upon to determine whether Housing Works has evidence sufficient to get to a jury on this issue.").

Plaintiffs urge the Court to overlook this "procedural infirmity" and grant its motion to strike because of Carver's discovery failures, namely, Carver's failure to set forth its damages in its initial disclosures and in response to Plaintiffs' interrogatory request for "all facts which support Carver's claim for damages, including the method or accounting utilized to compute such damages, and identify any document which support, relates or refers to such claim for damages." (Pls.' Mem. Law Supp. Mot. Strike 3-4; Pincus Cert. in Supp. Mot. Strike Ex. B at 9). Plaintiffs further argue that, pursuant to Rule 37 of the Federal Rules of Civil Procedure, the Court should preclude Carver from introducing evidence of its damages given its failure to respond to Plaintiffs' interrogatories. At the time this information was requested, however, Carver objected to the interrogatory on the grounds that it sought "information beyond what is permitted by the Southern District Local Rule 33.3." (Pincus Cert. Supp. Mot. Strike Ex. B at 9). If Plaintiffs disagreed with Carver's objection or believed that Carver was delinquent in its initial disclosures, Plaintiffs had ample opportunity to request a meet and confer to resolve the disputes or, if they were not resolved, to move to compel a response. Plaintiffs did neither. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (holding that the preclusion of evidence under Rule 37 is only appropriate if the Court finds that there was no substantial justification or that the failure to disclose was not harmless).

Plaintiffs further argue that because expert discovery did not close until January 28, 2013, forty-five days after the Court's Order and Opinion, they were not aware that Carver did not intend to file an expert report on the issue of damages. Yet Plaintiffs were clearly on notice that Carver intended to pursue damages related to this second counterclaim. If Plaintiffs believed

that summary judgment was premature because expert discovery had not yet closed, they could have filed a Rule 56(d) affidavit to request further discovery to defeat Carver's motion for summary judgment. Having failed to do so, they cannot now argue that they were prejudiced by this discovery schedule. *See Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004) (holding that "[t]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate" (internal quotation marks omitted)).[3] Further, it does not appear that Plaintiffs explored the issue of damages from Defendant's second counterclaim in the eleven depositions they took during the course of fact discovery; nor did they move to compel Defendant to provide this information.

In light of these failures, the Court does not find grounds on which to grant Plaintiffs' untimely motion to strike Defendant's second counterclaim. Plaintiffs were given generous time to conduct discovery and develop their theory of the case and adduce the necessary evidence to rebut Defendant's second counterclaim. If Plaintiffs believed that Carver's discovery responses were insufficient, they could have addressed these matters with the Court in a timely manner, which they failed to do. Having failed to raise this issue earlier in the litigation, Plaintiffs cannot now move to dismiss the second counterclaim on these grounds. Under the circumstances, any

---

[3] Rule 56(d) prescribes the procedures that a party opposing summary judgment must follow in order to assert that "it cannot present facts essential to justify its opposition." Under the Rule, a party requesting further discovery in order to defeat a motion for summary judgment must file an affidavit describing: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). As part of the 2010 amendments to Rule 56, discussion of the procedure for seeking additional discovery in response to a motion for summary judgment was moved from subdivision (f) to subdivision (d). The Advisory Committee Notes state that the new subdivision (d) "carries forward without substantial changes the provisions of former subdivision (f)."

challenge to the alleged deficiencies in Carver's evidence regarding the damages it incurred from the breach of the non-transfer provision of the Participation Agreement is properly left for trial.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is GRANTED as to the questions of whether Carver's prior breach of the Agreement relieved Mariner's Bank of its obligation to reimburse Carver for the advances and to seek Carver's consent before assigning its participation interest, as these issues are properly left for trial; Plaintiffs' motion for reconsideration is otherwise DENIED.  Defendant's motion to strike paragraphs 25, 43, and 44 of the Amended Complaint is GRANTED.  Plaintiffs' motion to strike paragraphs 82, 83, 101, and 118 of the Answer to the Amended Complaint is DENIED and Carver is granted leave, *nunc pro tunc*, to amend its Answer to include these paragraphs.  Finally, Plaintiffs' motion to strike Defendant's second counterclaim is also DENIED.

The parties are reminded that, per the Court's Order of March 1, 2013 (Docket No. 180), they have until **May 10, 2013**, to submit a Joint Pretrial Order and all related pretrial filings, including motions *in limine*, as set forth in the Court's Individual Rules and Practices for Civil Trials (available at http://nysd.uscourts.gov/judge/Furman).  The parties shall be trial ready approximately two weeks after they file the Joint Pretrial Order and related filings.

---

[4] Plaintiffs' argument that the Court should permit the recovery by Carver of only nominal damages is also unavailing.  Any damage calculation is to be determined by the jury at trial.  *See Stern v. Cosby*, 645 F. Supp. 2d 258, 276 n.12 (S.D.N.Y. 2009) (stating that under New York law, "a plaintiff entitled only to nominal damages of one dollar is entitled to the vindication which a jury verdict can bring").

The Clerk of Court is directed to terminate Docket Nos. 147, 156, and 177.

SO ORDERED.

Dated: April 10, 2013
New York, New York

_____
JESSE M. FURMAN
United States District Judge