UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                 :

PURCHASE PARTNERS, LLC,                 :

                 Plaintiff,       :

                                 :

   -v-                             :        09 Civ. 9687 (JMF)

                                 :

CARVER FEDERAL SAVINGS BANK,    :        MEMORANDUM

                                 :       OPINION AND ORDER

                 Defendant,   :

                                 :

   -v-                             :

MARINER'S BANK and PAUL SCHMIDT, SR.,  :

                                 :

            Third-Party Defendants.   :

-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/05/2014

JESSE M. FURMAN, United States District Judge:

      This case — a complex dispute involving three banks about losses arising from a mortgage loan to a borrower who subsequently defaulted — settled on the eve of trial in July 2013 after nearly four years of litigation.  Third-Party Defendant Mariner's Bank originally brought the case against Defendant Carver Federal Savings Bank ("Carver").  Just over one month after filing the Complaint, Mariner's Bank entered into an agreement to transfer its right, title, and interest in and to its claims in the case to Purchase Partners, LLC ("Purchase Partners"), which was then substituted as Plaintiff in the action.  (Docket No. 45).  Until May 2013, Seidman & Pincus, LLC ("S&P") was counsel of record for both Purchase Partners and Mariner's Bank.  On May 8, 2013, however, S&P filed a motion to withdraw as counsel for Purchase Partners.  (Docket No. 200).  By Order dated May 17, 2013, the Court granted S&P's

motion.  (Docket No. 204).[1]  The Court's May 17th Order provided that S&P holds "a charging lien, in accordance with [New York Judiciary Law Section] 475, against any verdict, decision, order or judgment entered in favor of Purchase Partners in this matter to secure the fees and expenses owed by Purchase Partners to [S&P]," and indicated that the amount of the charging lien would be "fixed at a later date by way of motion to be made by [S&P] on notice to all interested parties such that all parties can participate in the motion to fix the amount of [S&P's] charging lien."  (*Id.* at 2).

S&P now moves to fix the lien at $117,793.53.  (Docket No. 295; Mem. Law. Supp. S&P's Mot. Order Clarifying & Fixing Amount of Charging Lien ("S&P's Mem. Law") (Docket No. 296) 3-9).[2]  In opposing the motion, Purchase Partners contends principally that the Court should not exercise jurisdiction over the matter.  (Purchase Partners, LLC's Mem. Law. Opp'n S&P Mot. Clarifying & Fixing the Amount of the Charging Lien ("Pl.'s Mem. Law") (Docket No. 301)).  More specifically, it argues that its relationship with S&P is "an attorney-client relationship arising solely under the laws of the State of New York" and that "[t]here is no diversity of citizenship between S&P and Purchase Partners."  (*Id.* at 1).  Citing the factors set forth in Title 28, United States Code, Section 1367(c), Purchase Partners contends that the Court should decline to exercise supplemental jurisdiction over the fee dispute.  (*Id.* at 4).

---

[1]      Carver subsequently moved for reconsideration of the Court's May 17th Order.  (Docket No. 205).  The Court denied Carver's motion from the bench at a conference held on June 13, 2013.  (Docket No. 242).

[2]      In its motion, S&P also asked the Court to enter an order clarifying that settlement proceeds were an asset against which its lien could attach and providing that S&P would be paid from escrow in the event of a settlement.  (S&P's Mem. Law 1-3, 10).  Consummation of the parties' settlement, however, mooted those issues.  (S&P's Letter of Jan. 21, 2014 (Docket No. 309) 3-4).  Accordingly, the Court does not address them here.

Its argument is unpersuasive.  Under Section 1367(a), a court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Consistent with that grant of jurisdiction, it is well established that a court "may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys."  *Marrero v. Christiano*, 575 F. Supp. 837, 839 (S.D.N.Y. 1983); *see also, e.g.*, *Chelsey v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991) ("[T]he lien created by [New York Judicial Law S]ection 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts.").  The authority to hear such fee disputes extends "even [to] cases, such as that at bar, where the main action has been disposed of through settlement."  *Petition of Harley & Browne*, 957 F. Supp. 44, 47 (S.D.N.Y. 1997); *see also, e.g.*, *Zhao v. State Univ. of N.Y.*, No. 04 Civ. 210 (KAM) (RML), 2011 WL 3625133, at *3-5 (E.D.N.Y. Apr. 19, 2011).

Further, contrary to Purchase Partners' arguments, the factors set forth in Section 1367(c) do not call for declining jurisdiction.  *See* 28 U.S.C. § 1367(c) (providing that a district court "may decline to exercise supplemental jurisdiction" if one of four factors is present); *see also, e.g.*, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (holding that "the discretion to decline supplemental jurisdiction is available *only* if founded upon an enumerated category of subsection 1367(c)" (emphasis added)).  Purchase Partners primarily contends that the fee dispute raises "novel" and "complex" issues of New York state law, 28 U.S.C. § 1367(c)(1), but that contention does not survive scrutiny.  It claims, for example, that S&P failed to provide a written letter of engagement as required by New York law. (Pl.'s Mem. Law 5).  But S&P did, in fact, provide a letter of engagement (Seidman Reply

Certif. Further Supp. Mot. Order Clarifying & Fixing Amount of Charging Lien ("Seidman Reply Certif.") (Docket No. 305) ¶¶ 10-11; *id.* Ex. C); and, in any event, the amount of a charging lien is determined on a *quantum meruit* basis and the terms of a retention letter are only one factor in the inquiry. *See, e.g.*, *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010). Purchase Partners also contends that S&P labored under a conflict of interest in dually representing it and Mariner's Bank for most of the litigation. (Pl.'s Mem. Law 6-7.) But that argument is contrary to positions that Purchase Partners took earlier in the litigation (even after it obtained independent counsel). (Seidman Reply Certif. ¶¶ 9, 17-24.) Moreover, Purchase Partners executed an express conflict waiver at the outset of S&P's representation. (*Id.* ¶ 9; *id.* Ex. B).[3]

       In the final analysis, the decision to entertain an ancillary fee dispute is discretionary and turns upon "whether the policies of judicial economy, convenience, and fairness to litigants[] are furthered by the assumption of jurisdiction." *Chesley*, 927 F.2d at 64 (internal quotation marks omitted). Here, there is no question that exercising jurisdiction would further those policies. Notably, the Court imposed a charging lien in favor of S&P in its May 17th Order — almost two months before the trial was scheduled to begin — and expressly provided that the amount of the lien would be "fixed at a later date by way of motion to be made by [S&P]." (Docket No. 204). Further, S&P filed its motion prior to dismissal of the case, and the Court's Order dismissing the case expressly preserved the motion. (Docket No. 299). And finally, the Court is intimately

---

[3]      Relatedly, citing cases for the proposition that an attorney loses his right to enforce a lien if the attorney is discharged for cause, Purchase Partners asserts that it discharged S&P for cause. (Pl.'s Mem. Law 9-10 (citing *Petition of Harley & Browne*, 957 F. Supp. at 48)). Purchase Partners, however, presents no evidence to support that claim, which is also contrary to the record made when S&P withdrew from its representation of Purchase Partners. (Seidman Reply Certif. ¶¶ 30-34).

familiar with the issues and parties in the case, having presided over it through litigation of the cross-motions for summary judgment (and a related motion for reconsideration), litigation of S&P's motion to withdraw (and a related motion for reconsideration), and the settlement process. In such circumstances, it would be highly inefficient, not to mention unfair to S&P, to decline jurisdiction and leave S&P to pursue its remedies in a state court unfamiliar with the matter.

That leaves the question of at what amount to fix the lien.  Under New York law, "a charging lien may be determined 'on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of' counsel's withdrawal or discharge." *Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, 2010 WL 3359477, at *1 (S.D.N.Y. 2010) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)).  More specifically, courts look to the following factors in fixing the amount of a lien: "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)."  *Sequa*, 156 F.3d at 148.  A charging lien "is equitable in nature," and "the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Antonmarchi*, 2010 WL 3359477, at *1 (internal quotation marks omitted).

Applying those factors in light of the entire record, the Court finds that the amount sought by S&P, $117,793.53 (S&P's Mem. Law 3-9), is fair and reasonable.  Among other things, the case presented complex and difficult issues of both law and fact: The parties exchanged thousands of pages of document discovery, and conducted more than twenty fact depositions and a number of expert depositions as well.  (*See id.* at 5-8).  Moreover, S&P — led by counsel with twenty or more years of experience in complex civil litigation — handled (and handled well) several rounds of motion practice before the Court, including thorny cross-motions for summary

judgment and a motion for reconsideration of the Court's decision on summary judgment.  (*See id.* at 5-8 (listing the services that S&P provided Purchase Partners throughout the case)).

Finally, S&P's fees were calculated using the *exceedingly* low rate of $185 per hour (or, more precisely, $92.50 per hour insofar as Mariner's Bank assumed half of the fees) — a rate that S&P did not change throughout the three years of litigation and a rate normally "reserved by S&P for only its regular and long-standing bank clients" that was "conferred upon Purchase Partners as a matter of courtesy only, given the identity of interest is held with Mariner's Bank."  (*Id.* at 4-5).

*Cf., e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ. 7493 (VB), 2013 WL 4080946, at *17 (S.D.N.Y. May 30, 2013) (approving partner's hourly rate of $795); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *5-6 (S.D.N.Y. Mar. 16, 2011) (approving senior partner's hourly rate of $761).  If anything, therefore, $117,793.53 is *lower* than what Purchase Partners could fairly and reasonably have been ordered to pay S&P in this case.

The Court has considered all of Purchase Partners' arguments and finds them to be without merit.  Accordingly, S&P's motion for order fixing the amount of the charging lien is GRANTED.  The Clerk of Court is directed to terminate Docket No. 295.

SO ORDERED.

Dated: February 5, 2014
      New York, New York

_____
JESSE M. FURMAN
United States District Judge